J. A. Farrell and Doris Farrell v. Commissioner. Elmer C. Farrell and Dorothy Farrell v. Commissioner.
Farrell v. Commissioner
Docket Nos. 94918, 94919.
United States Tax Court
T.C. Memo 1963-60; 1963 Tax Ct. Memo LEXIS 285; 22 T.C.M. (CCH) 239; T.C.M. (RIA) 63060; February 28, 1963
Dougal C. Pope, Esq., 404 American Investors Bldg., Houston, Tex., for the petitioners. Lyle Walker, Esq., and Robert L. Liken, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the income tax for the taxable year 1957 of the petitioners J. A. Farrell and Doris Farrell in the amount of $1,578.93 and of the *286 petitioners Elmer C. Farrell and Dorothy Farrell in the amount of $1,675.56. The issues are whether the Farrell partnership is entitled to a deduction of $10,426.75 as a loss, or alternatively, as an ordinary and necessary business expense. Findings of Fact Some of the facts have been stipulated and they are found accordingly. J. A. and Elmer C. Farrell, who will sometimes be called petitioners, are partners engaged in raising rice on some thousand acres of land that is owned or leased by them in and around Brazoria County, Texas. W. R. Isaacs owned and leased land lying generally north of the land farmed by the partnership. For many years the land farmed by the partnership had been watered from a main lateral that extended generally fast and west just north of the Isaacs' land. The eastern portion of the partnership land was watered from the Farrell lateral which extended from the main lateral east and south, across a tract known as the Mitchell land and thus to the partnership land which bordered the Mitchell tract on the south. Isaacs had the lease on the Mitchell tract. The west portion of the partnership land had long been watered by a canal extending south from the Farrell *287 lateral across a 50-acre tract owned by Isaacs. This tract was just west of the Mitchell tract and it bordered the partnership land on the north. It would have been impossible, at least without pumping, to water the western portion of the partnership land from the Farrell lateral without bringing it across the 50-acre tract. In 1957 Isaacs refused to let the partnership run water across any portion of his 50-acre tract but said he would sell the land. By check dated April 29, 1957, petitioners paid Isaacs $15,000 and received from Isaacs a warranty deed dated April 25, 1957 to the 50-acre tract and an assignment of the Mitchell lease. On the same day petitioners gave a warranty deed to the 50-acre tract to their brother, J. T. Farrell. Petitioners paid $426.75 legal fees and expenses in connection with this transaction. The $15,000 paid to Isaacs was borrowed from the Alvin State Bank of Alvin, Texas, on two notes, one for $10,000 and one for $5,000. All three brothers signed the $10,000 note which was payable in five equal annual installments but this was treated as petitioners' loan, with J. T. Farrell as a surety. J. T. Farrell executed the $5,000 note and gave as security therefor *288 a deed of trust on the 50-acre tract he received in the transaction. Petitioners, in the year 1957, and in all years since, have used the canal across the 50-acre tract owned by J. T. Farrell during all said years to water their rice land that adjoins it on the south, without paying J. T. Farrell anything for said use. In the Farrell Bros. partnership income tax return for 1957, the partnership claimed $10,426.75 as a loss on the sale of property other than a capital asset. In their individual income tax returns for 1957, which petitioners filed jointly with their wives with the district director of internal revenue at Austin, Texas, petitioners each reported one-half of the partnership's 1957 earnings, computed with the above mentioned loss deduction. Respondent's determination that the $10,426.75 did not qualify as a deduction gives rise to the deficiency now in issue. Opinion Petitioners' entire argument is based upon facts that we cannot find upon the record presented. Petitioners state that in April 1957 they were forced to pay $15,000 to Isaacs in order to secure the right to run water to their 238 acres of leased rice land for one year and they recouped $5,000 of this *289 payment from their brother, J. T. Farrell, making a net expenditure of $10,000 plus legal expenses of $426.75, for a waterway for one year. The deal Isaacs was offering was more than the sale of the 50 acres for $15,000. It was the sale of the 50 acres plus the assignment of the Mitchell lease for a total payment of $15,000. The Mitchell lease covered 104 acres adjacent to petitioners' leased land and it also contained a waterway or canal leading from the main lateral to petitioners' land. J. A. Farrell testified that in 1957 they watered 76.26 acres of their rice land from the canal on the 50-acre tract and 161 acres from the lateral located on the property covered by the Mitchell lease. Petitioners merely ignore the Mitchell lease. J. A. Farrell testified the "deal was" that Isaacs would give the partnership the Mitchell lease when they bought the 50 acres. Such testimony followed by an assignment of the lease to them the day they bought the 50 acres means it must be included in the package of benefits secured by the payment to Isaacs. After obtaining the deed for the 50-acre tract from Isaacs, petitioners deeded the property to J. T. Farrell, who had in effect contributed $5,000 *290 of the $15,000 paid Isaacs, but they did not transfer or assign the Mitchell lease which had been obtained from Isaacs in the deal, to J. T. Farrell. They retained this lease, raised rice on the land covered by the lease in 1957 and used it for crops, and as a waterway to their other leased land for 1957 and subsequent years. The record would not support any conclusion that the payment made was to obtain water rights over the 50-acre tract for the year 1957 only. The facts clearly disclose some arrangement or understanding whereby the Farrell partnership could continue to use the 50-acre tract that they deeded to their brother, J. T. Farrell, for years after 1957. It is true there is no direct evidence of a specific agreement made in 1957 for petitioners' use of the 50-acre tract as a waterway for later years. About all J. A. Farrell would say with respect to whether such an agreement was made was: "I don't remember whether it was. I don't think it was. It wasn't mentioned." J. T. Farrell merely said he didn't "recall" making any agreement as to the water rights for later years. The surrounding circumstances, including the actions of the parties, establishes some general understanding *291 that water rights extending into future years were being retained by the petitioners. Petitioners did use the canal across the 50-acre tract as a waterway to water their rice land for all of the years after 1957 and were still using it at the time of trial and they had not paid J. T. Farrell anything for such use. It is entirely illogical for petitioners to argue they paid Isaacs a net of $10,000 to secure water for some 76 acres of rice land for one year on which, according to their own evidence, they could expect a profit of no more than $50 or $60 an acre. Under petitioners' own story that they were "forced" to buy the land to secure water rights to water their rice land, the entire transaction would be utterly meaningless unless thereby petitioners secured water rights for 1957 and future years. On the partnership return filed by Farrell Brothers for 1957 a deduction of $10,426.75 was claimed as a loss on the sale of the 50-acre tract. Petitioners argue they are entitled to a loss because of the sale of the 50 acres which was property used in their trade or business and therefore qualifies as a deduction under section 1231, Internal Revenue Code of 1954. *292 [1] However, since the sale was to their brother, they admit the entire loss cannot qualify as a deduction under the provisions of section 267(a) disallowing losses on transfers between members of a family. It is their argument three-fourths of the loss would qualify because all of the brothers were married and the property would be considered community property. It is sufficient to state that our view of the facts forecloses any argument that the partnership was entitled to any claimed loss. The partnership retained the continuing right to free use of the 50-acre tract to water their rice land, which right extended beyond the taxable year. Under our view of the facts the payment to Isaacs also secured the Mitchell lease. This leasehold right was also retained and this leasehold land was used for many years after 1957 and was still being used at the time of trial for growing rice and as a waterway to petitioners' other leased rice land. Petitioners did not in the year 1957 sell for $5,000 all that was obtained by their expenditure of $15,426.75. Petitioners are in effect claiming *293 a loss on property rights they did not in fact sell. Gary Black, 38 T.C. 673. They retained some sort of right to continue the use of the 50 acres as a waterway and the entire leasehold interest in the Mitchell lease. Petitioners make no attempt to apportion their costs between values of property and rights conveyed and values of property and rights retained. Their entire argument is based on a theory that all that was obtained was the 50 acres; that the Mitchell lease was just given to them; and evidently free use of the 50-acre tract as a waterway for one year only was orally given to them by their vendee. As pointed out, we have found otherwise and these findings dispose of the loss theory advanced by petitioners. Our same view of the facts forecloses petitioners' argument that they are entitled to a deduction of $10,426.75 as an "ordinary and necessary business" expense under section 162. Petitioners' argument is: "That the substance of the transaction in which the Petitioners expended $10,426.75 was that this $10,426.75 represents the cost of obtaining water for their 1957 rice crop and is deductible as an ordinary and necessary business expense." As stated earlier, *294 this is not this Court's view of the "substance of the transaction." It is rather pointless to pursue the argument advanced by petitioners, which is entitrely based upon facts we cannot find. The most we could find as "substance of the transaction" would be a 1957 expenditure of a net of $10,426.75 for water rights for that and future years and for the assignment of a lease. Such an expenditure would obviously not qualify as a deductible business expense in 1957. An expenditure to secure an asset or benefit that will extend beyond the taxable year is a capital outlay and not an expense. S. M. Howard, 39 T.C. - (Feb. 21, 1963). Petitioners make some argument that the expenditure was made to avoid a rice allotment penalty in future years if they did not grow rice on the 238 acres in 1957. There is no use going into this argument. Under the regulations of the Secretary of Agriculture, petitioners could have acted to preserve their rice allotment history even though rice was not raised on land they designated for a rice crop in 1957. We hold for respondent on the issue presented. To give effect to agreed adjustments, Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩